UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. BRIAN McCLENDON, | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | 09 C 7015 |
| DONALD GAETZ, Warden, Menard Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

**<u>MEMORANDUM OPINION</u>**[1]

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on a petition for a writ of habeas corpus filed by Petitioner Brian McClendon pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

**BACKGROUND**

McClendon is currently serving a life sentence for first-degree murder. The conviction resulted from events that occurred on the night of November 6, 2003. At

---

[1]McClendon is housed at Menard Correctional Center. When he first filed his § 2254 petition, Donald Gaetz was the warden at that facility. During the time that the instant petition has been pending, Dave Rednour has replaced Gaetz in that capacity. Consequently, Rednour is the state officer who has custody of McClendon and is substituted for Gaetz as the respondent in this matter. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

that time, McClendon lived in Chicago with his girlfriend, Theresa Henry. After several hours of drinking with Credell Harris, a friend of McClendon's and a former boyfriend of Henry's, McClendon and Henry began to argue about her prior relationship with Harris. McClendon, who is 6 feet 1 inch tall and between 175 and 195 pounds, struck the 140-pound 5-foot-4 Henry repeatedly and eventually knocked her down in the living room of their house. The fight temporarily ceased when he went into the kitchen and she went into a bedroom. While in the kitchen, McClendon retrieved a loaded, cocked handgun from a windowsill.

When Henry came out of the bedroom, the altercation resumed. McClendon continued to strike Henry while still holding the loaded weapon. A blow to Henry's face again knocked her to the floor. As Henry lay on the floor, McClendon stood over her, continued to hit her with his fists and the gun, and then shot her in the left side of her face. Medical evidence adduced at trial showed that gunpowder and soot from the discharge was found only inside the wound indicating that the barrel of the gun was pressed tightly into Henry's face when discharged.

After shooting Henry, McClendon left the home with Harris, who had remained inside the residence but who was not in the kitchen when Henry was shot. Both men were arrested shortly thereafter. Upon his arrest, Harris gave a written statement to police and a prosecutor relating his version of the events. According to the statement,

Harris heard McClendon repeatedly yell "You're lying. I'm going to f*** you up," immediately before the shot was fired. None of the police reports mentioned that phrase, and, when he eventually testified at McClendon's trial, Harris denied relating that portion of the event to police.

McClendon, by contrast, underwent a videotaped interview. In it, he initially related that Henry was standing when she was shot. When told that his account did not square with other evidence the police had gathered, he revised his version to state that Henry was lying on the kitchen floor when he shot her. He went on to say that he stood over the prostrate Henry, hit her, and pointed the gun, which he knew to be loaded and cocked, at her. McClendon stated that the gun "went off," but he maintained that he did not mean to shoot Henry. Rather, according to McClendon, he "snapped" as a result of his sense of betrayal and perception that Henry had lied to him about Harris.

At a bench trial, the prosecution's evidence included testimony from Harris and an Assistant State's Attorney ("ASA") who participated in McClendon's videotaped interview and took down Harris's post-arrest statement. Testimony was also given by the police officer who initially determined that McClendon was the shooter and a detective who assisted in the interviews of Harris and McClendon. The trial judge also received the aforementioned medical evidence pertaining to the location of the gunshot residue within Henry's wound.

At the close of the evidence, the judge found McClendon guilty of first-degree murder. In Illinois, first-degree murder consists of killing another without lawful justification when the person causing the death either intends to kill or do great bodily harm or knows that the acts that caused the death would create a strong probability of death or great bodily harm. 720 ILCS 5/9-1. The trial judge rendered his verdict without making specific findings of fact or conclusions of law, and McClendon was sentenced to life in prison as a habitual criminal based on his prior record.

McClendon appealed the conviction, asserting that the prosecution did not show that he had the specific intent necessary to support a verdict of guilt on a first-degree murder charge. Rather, he contended that the evidence showed that his acts were reckless, a mental state that would only support a guilty verdict on a charge of involuntary manslaughter. Because McClendon's challenge called into question the sufficiency of the evidence raised at trial, the appellate court reviewed all of the evidence presented at trial in a light most favorable to the prosecution to determine whether any rational factfinder would have found McClendon guilty of all of the elements of first-degree murder.

The court concluded that the evidence supported a finding that McClendon acted with the requisite mental state. The court based its holding on several pieces of evidence, focusing primarily on what McClendon's conduct indicated about his mental

state. Specifically, the court pointed to McClendon's repeated beating of Henry despite his significant height and weight advantage, his use of his gun in the fight despite his knowledge that it was loaded and cocked, and the medical evidence pertaining to the manner in which Henry was shot. The court also found Harris's written statement significant and noted that the ASA testified that Harris had stated during his interview with the ASA that McClendon told Henry he was going to "f[\*\*\* her] up."

In McClendon's favor, the court noted that Harris testified at trial that he did not remember telling the ASA that McClendon had threatened Henry. The court also took into consideration Harris's testimony that, after the shooting, McClendon told him that he had not meant to shoot Henry. The court noted McClendon's words to the same effect during his videotaped interview but concluded that the evidence in McClendon's favor was insufficient to overcome the effect of the other items detailed above. McClendon sought leave to appeal the decision from the Illinois Supreme Court, requesting that the high court decide whether the appellate court had erred in finding that McClendon had been proven guilty of first-degree murder beyond a reasonable doubt. The petition was denied.

McClendon also filed a pro se petition for postconviction relief, which raised several grounds he claimed entitled him to relief from his conviction. In particular, he provided an affidavit from Harris stating that, at the time of Henry's murder, he was a

police informant. According to the affidavit, the police instructed Harris when he was arrested to state that McClendon had threatened Henry as described before shooting her. McClendon argued that this constituted use of perjured testimony by the prosecution that necessitated a hearing on his petition. After the trial court summarily denied his petition, McClendon appealed, through counsel. The sole ground raised on appeal challenged the use of Harris' allegedly perjured testimony at trial. The dismissal of the petition was upheld on appeal. Thereafter, McClendon filed a petition for leave to appeal to the Illinois Supreme Court, in which he included arguments that were in his initial petition but not presented to the court of appeals. Leave to appeal was denied.

McClendon then timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In it, he advances nine grounds for relief.

**LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in state custody may petition a district court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA further dictates that a prisoner in state custody cannot be granted habeas relief "unless the state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Schaff v. Snyder*, 190 F.3d 513, 521 (7th Cir. 1999) (quoting 28 U.S.C. §§ 2254(d)(1), (2)). For a state court decision to be "contrary to" clearly established federal law, it must be "substantially different" from relevant Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000). This situation arises if the state court either applies a rule that contradicts the governing law as set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and still arrives at a different result. *Id.* at 405-06. A state court decision involves an "unreasonable application" of clearly established Supreme Court law when it uses the correct legal rule but applies it in an objectively unreasonable manner. *Id.* at 409-10. An objectively unreasonable decision is one that lies "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

Under 28 U.S.C. § 2254(d)'s "highly deferential standard for evaluating state court rulings," in deciding habeas petitions, we must give state court decisions "the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (citation omitted). In doing so, "issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing

evidence." *Lechner v. Frank*, 341 F.3d 635, 638 (7th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). With these considerations in mind, we turn to McClendon's petition.

## DISCUSSION

As a preliminary matter, we would like to clarify the scope of our review of McClendon's petition. In their 24-page brief, the state urges that its arguments are limited only to whether McClendon's claims are procedurally defaulted. It requests further proceedings to brief the merits of any claim that we conclude is not defaulted but despite that request argues the merits of some of the claims presented in the habeas petition. McClendon's 93-page response also delves into the merits of his petition. Given the developed state of the filings that have already been made, we will examine both the procedural state of McClendon's claims as well as the merits of any claims properly before this court.

McClendon asserts eight claims in his habeas petition. In the first, he contends that § 2254 is unconstitutional. The second addresses whether the evidence presented at trial was sufficient support for a conviction for first-degree murder. The third contends that trial counsel was ineffective for failing to file a motion to quash McClendon's arrest. The fourth and fifth attack the legality of a state statute controlling the manner in which a warrantless arrest is conducted. The sixth states that trial counsel worked under a conflict of interest when representing McClendon because his trial

counsel was obligated to protect Harris as a law enforcement informant (presumably McClendon's belief that the latter obligation existed arises from the fact that counsel was appointed to represent him by the state, rather than being privately retained). The seventh ground claims that the state allowed law enforcement officials to testify at his trial without including in their testimony that Harris was an informant. The eighth ground takes issue with two aspects of the manner in which the postconviction proceedings were conducted: first, that the postconviction court did not recognize an affidavit of Harris included with the petition; and second, McClendon's perception that his appointed postconviction appellate counsel presented an improper claim and ignored others that were meritorious in an effort to deliberately sabotage his chances on appeal.

**I.     Claim One**

In the first ground of his petition, McClendon insists that 28 U.S.C. § 2254 is unconstitutional. He argues that the statute's limitation of relevant precedent to only that emanating from the U.S. Supreme Court is an impermissible encroachment by Congress into the sphere of an Article III court's ability to analyze a habeas petition. Shortly after the 1996 passage of the amendments with which McClendon takes issue, the Seventh Circuit examined their constitutionality through the lens of arguments similar to his. *Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). Since *Lindh* was decided, other courts of appeal have

considered and rejected similar challenges to the constitutionality of § 2254. *Evans v. Thompson*, 518 F.3d 1, 3 (1st Cir. 2008); *Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *abrogated in part by Williams v. Taylor*, 529 U.S. 362 (2000). As these cases have extensively discussed the shortcomings of arguments such as those McClendon sets forth, it is unnecessary to restate them here. In sum, they stand for the proposition that the relevant limitation of 28 U.S.C. § 2254(d)(1)—that a writ shall not issue for any claim adjudicated on the merits in a state court unless the decision resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as set out by the U.S. Supreme Court—is constitutionally sound. Accordingly, McClendon's first asserted ground for relief is not meritorious.

## II. Claim Eight

The eighth ground of McClendon's petition challenges errors made by the postconviction courts as well as postconviction counsel. While the contents of postconviction proceedings are relevant to determining whether a state prisoner has presented habeas claims to a state court for review, the conduct of the state appeals court in deciding only the issues presented to it does not raise issues of constitutional proportions. Additionally, because the Sixth Amendment right to counsel does not extend to postconviction proceedings, the actions of McClendon's attorney in

presenting his postconviction appeal do not constitute grounds for habeas relief. 28 U.S.C. § 2254(I); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (limits of right to counsel only extend to first appeal as of right). Therefore, Claim Eight is denied.

## III. Claims Three Through Seven

The State contends that McClendon's third, fourth, fifth, sixth, and seventh claims are procedurally defaulted. A person in the custody of a state pursuant to a criminal conviction is not entitled to federal habeas relief unless he or she has properly presented the claims to a state court in the first instance, thus allowing the state court to address constitutional issues in a more timely fashion if a violation has occurred. *Johnson v. Pollard*, 559 F.3d 746, 751-52 (7th Cir. 2009). In order to properly present an issue to a state court, a prisoner must submit it to a "complete round" of review in the state system. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The remaining five claims were never brought to the attention of all three levels of state court review during either direct review or postconviction proceedings. Though some periodically appeared, none of these claims were consistently presented through a complete round of state court review, and they are accordingly procedurally defaulted. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

A petitioner can avoid the effect of a procedural default by establishing either cause and prejudice to excuse the default or a fundamental miscarriage of justice if the claim is not considered. *McGee*, 593 F.3d at 565. McClendon argues that we relieve him from the procedural bar of reviewing his claims because of errors made by the attorney who represented him during the appeal of his postconviction petition. According to McClendon, postconviction appellate counsel "took every measure to act against the interest of this petitioner, while presuming to act as an agent on [McClendon's] behalf." Although decisions by counsel on direct appeal may provide cause for procedural default, those of postconviction appellate counsel do not provide any excuse for procedural default. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-9 (1992); *McGee v. Bartow*, 593 F.3d 556, 565-67 (7th Cir. 2010). Moreover, whether appointed or retained, attorneys are agents of their clients and their acts, whether good or bad, are attributable to their clients under the rules of agency. *Johnson v. McBride*, 381 F.3d 587, 589-90 (7th Cir. 2004). Though the Sixth Amendment is an exception to this general rule with regard to direct criminal proceedings, because postconviction proceedings are outside the scope of that amendment, the agency principle remains intact. *See id.* Accordingly, McClendon's attorney's actions are treated as though they are McClendon's own, making him responsible for them and subject to the consequences of their occurrence. Because these claims are procedurally defaulted and

McClendon asserts no reason for us to excuse their default, we deny Claims Three, Four, Five, Six, and Seven.

IV. **Claim Two**

With regard to McClendon's second claim, which discusses whether the evidence adduced at trial was sufficient to support a first-degree murder conviction, the state argues that McClendon failed to present the claim for one complete round of state review because of changes in the arguments he made in asserting this issue before the various state courts. McClendon's arguments on this issue have been somewhat of a moving target. However, we are mindful of the fact that in reviewing a habeas petition filed pro se, this court is obliged not to take an overly technical approach to determining whether a petitioner has defaulted on a particular argument. *Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009). When that standard is applied in this case, we find a consistent core of an argument that emerges from all of McClendon's filings related to the issue of the evidence in favor of conviction for first-degree murder. Because the basic rationale of his position on this issue has been discernible throughout the state court proceedings, it was fairly presented to the state courts for their review and so is not barred from consideration by procedural default. *McGee v. Bartow*, 593 F.3d 556, 566 (7th Cir. 2010).

The essence of McClendon's claim is that the state court's finding that he had the requisite mental state for first-degree murder was based upon Harris's purported statement to police regarding threats to Henry immediately preceding the fatal shot. McClendon has set forth evidence, from Harris's differing testimony at McClendon's trial to the affidavit Harris provided in support of McClendon's postconviction petition, to establish that those threats were not made. He clearly believes that if the evidence of the threat is discounted, the state courts' conclusion that he acted with intent to kill rather than in a reckless manner cannot stand.

That belief is in error. The reasoning set forth in the state court opinion and summarized earlier in this opinion makes clear that the evidence considered and used to support a finding of intent to kill was not limited to the alleged threats made to Henry. Instead, the court considered several indications of McClendon's intent manifested in his behavior and the uncontroverted physical evidence. In the face of conflicting evidence, the court set out the possible conclusions that could be reached and made reasonable choices among them. The careful examination and weighing of the evidence presented at trial is a clear example of receipt of due process, not a denial thereof. The determination of the facts in light of the evidence presented at McClendon's trial was reasonable and supported by ample objective bases to conclude that each element of the crime of first-degree murder was shown. Because the state

court proceedings did not disregard McClendon's due process rights, his continued custody is in conformity with the Constitution, and habeas relief is not available to him under 28 U.S.C. § 2254. We therefore deny Claim Two.

## CONCLUSION

Based on the foregoing analysis, McClendon's petition for a writ of habeas corpus is denied.

_____
Charles P. Kocoras
United States District Judge

Dated:     August 4, 2010